[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-13512
Non-Argument Calendar
_____

D.C. Docket Nos. 4:19-cv-00155-MHC,
4:18-cr-00001-MHC-WEJ-1

MICHAEL MCEARCHEN,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 22, 2021)

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM and LAGOA, Circuit Judges.

PER CURIAM:

Michael McEarchen, a federal prisoner, appeals the denial of his motion to vacate his sentence. 28 U.S.C. § 2255. McEarchen challenged his sentence of 120 months of imprisonment following his plea of guilty to using interstate commercial facilities in the commission of a murder-for-hire. 18 U.S.C. § 1958(a). We granted a certificate of appealability to address whether "trial counsel was ineffective for failing to effectively engage in the plea negotiation process and accurately inform McEarchen of the accurate legal sentence possible under the law." The district court ruled that McEarchen's claim of ineffectiveness was "belied by the record." We affirm.

McEarchen executed a written plea agreement with the government. The agreement stated that the government "agree[d] not to bring further criminal charges against [McEarchen] related to the charge[] to which he [was] pleading guilty" and to recommend that he receive "adjustment[s] for acceptance of responsibility" and "be sentenced at the low end of the adjusted guideline range." The agreement also stated that McEarchen faced a "[m]aximum term of imprisonment [of] 10 years" and that "[t]here [were] no other agreements, promises, representations, or understandings between [him] and the Government."

McEarchen also signed another form in which he certified that he had "read the foregoing Plea Agreement and . . . carefully reviewed every part of it with [his] attorney" and that he "underst[ood] the terms and conditions in the Plea Agreement

2

. . . [and] voluntarily agree[d] to them." He also certified that "[n]o one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement" and he was "fully satisfied with the representation provided to me by my attorney in this case."

During the change of plea hearing, McEarchen verified that he "still want[ed] to go ahead with [his] guilty plea" even though the district court had "authority to impose a maximum term of imprisonment of up to 10 years or a maximum term of 10 years." McEarchen authenticated his plea agreement and certification. He said he understood that, if he went to trial, he could lose the benefit of, among other things, "credit for acceptance of responsibility" [and] that [could] substantially increase the severity of any sentence imposed . . . in [his] particular case." He also acknowledged that "the maximum term of imprisonment in [his] case is up to and including 10 years," the district court could impose the maximum penalty, and no promises or inducements had been made to him other than those identified in the plea agreement. After McEarchen agreed that the government could prove he paid an informant to kill his former wife, the district court accepted his plea of guilty.

The district court sentenced McEarchen to 120 months of imprisonment. The district court determined that McEarchen's statutory maximum sentence became his sentence under the guidelines because it was less than his advisory sentencing

range of 121 to 151 months. *See* U.S.S.G. § 5G1.1(a). The district court rejected McEarchen's argument that his presentence investigation report overstated his criminal history as category IV instead of category III, which increased the low end of his sentencing range from 108 to 121 months of imprisonment. The district court also rejected McEarchen's request for a downward variance to 108 months of imprisonment on the ground that imposition of the statutory maximum sentence gave him "absolutely no benefit from accepting responsibility early and pleading early." As the prosecutor explained, McEarchen benefitted from pleading guilty because the government agreed to forego prosecuting "other pending crimes, including the drug" offense of possessing cocaine with intent to distribute and to "let[] this case resolve all of his pending potential charges that are federal."

Later, McEarchen moved to vacate his sentence on the ground that his trial counsel was ineffective for misstating that he faced a sentence of life imprisonment if convicted at trial. But the district court denied McEarchen's motion because "the record belied [his] claim that he would not have pled guilty if he had been correctly advised about his sentencing exposure" and he had "not shown that it would have been rational under the circumstances to reject the plea offer where the government could have brought additional federal charges."

The decision to deny McEarchen's motion to vacate is subject to plenary review. We review findings of fact for clear error and the application of the law to

those facts *de novo*. *See Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 1755 (2021). A claim of ineffective assistance of counsel presents a mixed issue of law and fact that we review *de novo*. *See id.*

A "high bar" exists for a postconviction movant to prevail on an argument that trial counsel acted ineffectively. *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Because counsel is presumed to have provided representation "within the 'wide range' of reasonable professional assistance," for the movant to succeed on an argument of deficient performance, he must establish that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 689 (1984). Even if counsel's representation fell below an objective standard of reasonableness, the movant must also establish that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial. *Diveroli v. United States*, 803 F.3d 1258, 1262 (11th Cir. 2015). The movant must prove that a decision to reject the plea bargain would have been rational under the circumstances. *Padilla*, 559 U.S. at 372.

Even if we, like the district court, assume that counsel made a professional error, McEarchen could not establish a reasonable probability that he was prejudiced by his counsel's statement concerning the length of his sentence. McEarchen knew what sentence he faced when he changed his plea to guilty. His

plea agreement stated that he faced a statutory maximum sentence of ten years of imprisonment, and he certified that "[n]o one . . . threatened or forced [him] to plead guilty, and no promises or inducements [were] made . . . other than those discussed in the Plea Agreement." He acknowledged during his plea colloquy that he had read and understood his plea agreement and the certification, and we presume that those statements are true. See *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting from *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977), that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings."). And he twice affirmed that he wanted to plead guilty with the understanding that the district court could impose the statutory maximum penalty. McEarchen entered his plea of guilty with full knowledge that he might receive a sentence of ten years of imprisonment.

McEarchen also cannot "convince [this Court] that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. McEarchen accepted an advantageous plea arrangement. McEarchen does not deny that he is guilty. And McEarchen's plea arrangement eliminated the risk that he would receive a sentence exceeding ten years because the government

agreed to forgo charging him for other federal crimes, including a serious drug crime.

The district court did not err by denying McEarchen's motion to vacate. McEarchen failed to establish that, but for his counsel's statement, there existed a substantial likelihood that he would have insisted on going to trial. McEarchen knew he could receive a sentence of ten years of imprisonment, and by pleading guilty, he avoided prosecution for additional serious crimes for which, as a repeat offender, he would have received a significantly longer sentence. He was not prejudiced by heeding counsel's advice to plead guilty.

We **AFFIRM** the denial of McEarchen's motion to vacate.